In the

# United States Court of Appeals

For the Seventh Circuit

———————

No. 01-3790

FREDERICK REICH
and JOANNE C. REICH,

*Plaintiffs-Appellants*,

*v.*

LADISH COMPANY INCORPORATED
and LADISH COMPANY PENSION
PLAN, INTERNATIONAL ASSOCIATION
OF MACHINISTS AND AEROSPACE
WORKERS, LOCAL 1862,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 C 319—**Aaron E. Goodstein,** *Magistrate Judge.*

———————

ARGUED APRIL 15, 2002—DECIDED OCTOBER 7, 2002

———————


Before ROVNER, DIANE P. WOOD and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Frederick and Joanne Reich sued Frederick's former employer, Ladish Company, Inc. ("Ladish"), and its pension plan, Ladish Company Pension Plan, International Association of Machinists and Aerospace Workers, Local 1862 (the "Plan") because the Plan denied Frederick certain disability and health benefits. The district court granted summary judgment in fa-

vor of the defendants and the Reichs appeal. We reverse and remand.

## I.

Frederick Reich ("Reich") worked as a machinist for Ladish for almost thirty years. In the early 1990s, he was diagnosed with Small Airways Disease and Chronic Obstructive Pulmonary Disease. Because of these illnesses, Ladish periodically placed Reich on paid medical leave over the next few years. In July 1995, Reich's physician released him from one of these leave periods to return to work with certain restrictions. Among other conditions, Reich was limited to light work and required continuous oxygen. Reich's doctor confirmed that these restrictions were permanent. On July 26, 1995, Ladish terminated Reich, stating that the company had determined that there were no jobs within the bargaining unit that Reich could safely perform, even with accommodations, given his medical restrictions.

Reich subsequently sued Ladish for disability discrimination, for failure to accommodate his disability, and for retaliating against him for engaging in protected activity. Ladish was represented by its in-house attorney, Lawrence Hammond. Hammond supervised Gerald Bitters, who worked as Ladish's Manager of Benefits Administration. Bitters was responsible for the day-to-day processing of pension benefit applications. Ladish successfully defended the suit by arguing that Reich's disability prevented him from working safely at Ladish. In the course of the suit Ladish explained that it was not paying Reich disability benefits because the Plan covered only those employees who were found to be disabled by the Social Security Administration ("SSA"). At that time, Reich's petition for Social Security Disability was still pending. In April 1998, the SSA awarded Reich disability

benefits based on a disability onset date of August 22, 1994. After receiving this favorable determination from SSA, Reich renewed his application for disability pension benefits with Ladish, attaching a copy of the SSA decision.

Bitters wrote a letter to Reich denying the benefits because Reich was not an employee at the time he received the SSA ruling of disability:

> As you are aware, your employment was terminated in July of 1995 for your unavailability for work at the Company. You were advised shortly after your employment terminated that you have a deferred vested benefit for which you are eligible at age 60. The Plan does not provide for a former employee to apply for a disability retirement some two years and nine months after his "employee" status ends. You are therefore not eligible for a disability pension; however, your rights to a deferred vested pension at age 60 remain in force.

R. 20, Ex. 7. In a separate letter, Bitters informed Reich he was not eligible for group health insurance benefits unless he was receiving a disability pension. R. 20, Ex. 8. Reich appealed the decision to Bitters and, in a letter to Reich's attorney, Bitters denied the appeal:

> Mr. Reich's approval for Social Security took place several years after his termination of employment at the company. The basis and circumstances for his termination are not issues I am involved with; it is my job to administer the pension plans. Although the administrative law judge awarded Mr. Reich retroactive entitlement to Social Security benefits, this did not change his status with Ladish Co., that is, he was not retroactively reinstated to employee status. Many former employees may become disabled, but they are not Ladish "retirees". As you are undoubted-

> ly aware, during the time when Mr. Reich was employed at the company his petitions for Social Security disability were denied. Our plan requires that, in order to be a "participant" the individual must be a "covered employee", and unfortunately upon the termination of his employment Mr. Reich ceased to be a "covered employee".

R. 20, Ex. 12. Reich subsequently sued Ladish and the Plan pursuant to the Employee Retirement and Income Security Act ("ERISA"), seeking judicial review of the Plan's denial of disability and health insurance benefits, and for Ladish's breach of fiduciary duty.

The district court granted summary judgment in favor of the defendants. Because the Plan granted discretion to the administrator to pay or deny claims, the district court reviewed the Plan's denial of Reich's claim under the arbitrary and capricious standard. Reich argued for closer review because of an alleged conflict of interest between the Plan and Ladish. Because of the structure of benefits, Ladish would have been required to fund health insurance benefits if Reich was found entitled to disability benefits. Reich maintained that Ladish thus had an incentive to deny him disability benefits so that it would not have to pay his health insurance premiums. Because of this alleged conflict of interest, Reich urged the district court to apply a higher level of scrutiny to the decision denying disability benefits. The court declined to apply a higher standard, finding there was no evidence of a significant conflict.

The court similarly declined the defendants' invitation to consider *post hoc* rationalizations for the decision to deny benefits. At the time of the denial, Bitters relied entirely on the fact that Reich did not have a favorable finding of disability from the SSA at a time when he could be considered a "Participant" under the Plan. The court thus

refused to consider the Plan's new argument that Reich's medical conditions did not rise to the level of a disability as defined by the Plan. The court instead focused on whether the Plan administrator acted arbitrarily and capriciously in finding that Reich was not a "Participant" under the Plan because he was not a "Covered Employee" at the time he received a finding of disability from SSA. The court found that the Plan administrator's interpretation of the word "Participant" was reasonable. The court found no conflict between the definition of the word "Participant" in the deferred vested retirement part of the Plan and the use of that same word in the disability benefits part of the Plan. The court therefore granted judgment in favor of the defendants on Reich's ERISA claims. The court also found that the defendants were entitled to summary judgment on the breach of fiduciary duty claim because Ladish was merely trying to make a settlement offer at the time and thus did not breach its duty. Reich appeals.

## II.

We review the district court's grant of summary judgment *de novo*. *Anstett v. Eagle-Picher Indust., Inc.*, 203 F.3d 501, 503 (7th Cir. 2000). On appeal, Reich contends that the Plan administrator's decision was arbitrary and capricious. In particular, he maintains that the plain language of the Plan requires a finding that he was a Participant entitled to disability benefits because the company conceded he was a Participant for the purposes of another part of the Plan relating to deferred retirement benefits. He also argues that the interpretation of "Participant" offered by the defendants here defies common sense because almost no one would be eligible for the benefit if the Plan is read as Ladish urges. As a remedy, he asks us to grant summary judgment in his favor or to remand to the district court rather than remanding to the Plan administrator.

We begin by turning to the many inter-related terms of the Plan. Reich primarily seeks Disability retirement benefits. If he is entitled to Disability retirement benefits, Ladish concedes he is also entitled to health insurance coverage. The Plan determines his eligibility for Disability retirement benefits:

> Eligibility. A Participant who attains his Disability Retirement Date shall be eligible to receive a Disability retirement benefit under the Plan, in accordance with and subject to the provisions of the Plan.

R. 20, Pension Plan, ¶ 4.3(a). With its many defined terms, this provision raises more questions than answers and we must turn to other parts of the Plan for definitions of these terms:

> The term "Participant" means any Covered Employee who has met the eligibility requirements of the Plan to become a Participant, as set forth in Section 3 hereof.

R.20, Pension Plan, ¶ 2.1(l). In turn:

> The term "Employee" means any person employed by the Company or an Affiliate. The term "Covered Employee" means any hourly rated Employee who is employed by the Company and who is covered by the collective bargaining agreement between the Company and International Association of Machinists and Aerospace Workers, Local #1862, Cudahy, Wisconsin.

R.20, Pension Plan, ¶ 2.1(i).

> "Disability Retirement Date" means for a Participant whose Continuous Service terminates on or after he has attained his Disability Retirement Age because of his Disability, the first day of the calendar month coincident with or next following the later to occur of the date which is:

> (i) six months after the date the Disability was incurred or
>
> (ii) the date application for a Disability retirement benefit is made.

R. 20, Pension Plan, ¶ 2.1(o)(3). The provision defining the term "Continuous Service" covers two single-spaced pages in the Plan and, like the rest of the Plan, is not a model of clarity. R. 20, Pension Plan, ¶ 3.5.

On close review, however, the definition of the term "Continuous Service" is not dispositive in resolving Reich's case. Unlike the Plan, Reich's argument is remarkably simple. Reich contends that when the Plan defines a term, that term must be interpreted consistently throughout the Plan. In particular, Reich urges us to find that the word "Participant" must be given a consistent meaning throughout the Plan. If an employee is a Participant for the purposes of one benefit, Reich argues, the Plan administrator is obliged to consider the employee a Participant for all other benefits as well.

The defendants have conceded that Reich is entitled to "Deferred Vested Retirement Benefits." Recall that in the letter where Bitters told Reich he was not entitled to Disability retirement benefits, Bitters concluded that, nonetheless, "your rights to a deferred vested pension at age 60 remain in force." R. 20, Ex. 7. On appeal, the defendants have continued to agree that Reich is entitled to his Deferred Vested Retirement Benefits even though he will not reach age 60 until several years after his employment ended. The Plan defines eligibility for Deferred Vested Retirement Benefits in a manner remarkably parallel to the eligibility for Disability retirement benefits:

> Eligibility. A Participant who attains his Deferred Vested Retirement Date shall be eligible to receive

a deferred vested retirement benefit under the Plan, in accordance with and subject to the provisions of the Plan.

R. 20, Pension Plan, ¶4.4(a). In fact, the only difference between this provision and the eligibility paragraph for Disability retirement benefits is the label for the type of benefit and the label for the date on which a Participant becomes eligible. The defendants concede that for the purposes of the Deferred Vested Retirement Plan, Reich is a Participant even though he will not be an employee at the time he meets all of the conditions for eligibility for the benefit. That is, Reich will not attain the age of 60 until after the termination of his employment with Ladish. He has met the eligibility requirements for deferred vested retirement benefits in every other respect. Similarly, in the case of the Disability retirement benefits, Reich did not receive his favorable ruling from the SSA while he was still employed, but had fulfilled every other requirement for eligibility (e.g., he had been employed for a period of at least fifteen years and was disabled) while he was employed by Ladish.[1]

---

[1] Ladish now claims that Reich did not meet every other criteria while he was employed by Ladish. In particular, Ladish argues that Reich was not disabled under the terms of the Plan during that time. Ladish's claim comes too late. The company may not litigate its case in piecemeal fashion. Ladish was required to give Reich every reason for its denial of benefits at the time of the denial. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999) (under the arbitrary and capricious standard, our review is limited to the administrative record, and we may not later consider the mental processes of the plan administrator); 29 U.S.C. § 1133 (requiring every employee benefit plan to provide adequate notice in writing to any employee whose claim for benefits has been denied, setting forth the specific reasons for the denial). *See*

(continued...)

Although Reich argued below that the court should review the administrator's decision with some rule more stringent than the arbitrary and capricious standard, he concedes on appeal that we need only decide whether the administrator's decision was arbitrary and capricious. *See Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir. 1998); *Mers v. Marriott International Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998) (ERISA claimant must establish actual conflict of interest in order to show bias and justify higher standard of review). We will therefore reverse only if the administrator's decision was clearly unreasonable. *Hightshue*, 135 F.3d at 1147. According to Ladish's definition of Participant, in addition to reaching his fifteenth year of employment and becoming disabled while employed, Reich was required to receive a finding of disability from the SSA while he was still employed. Ladish insists on this interpretation even though it did not require Reich or any other employee to reach age 60 while still an employee in order to receive deferred vested retirement benefits under an identically worded provision. We expressed our concern at oral argument that the Disability retirement benefit is illusory under this definition because the company is free to terminate a disabled employee long before he or she completes the lengthy process of receiving a finding of disability from the SSA. Ladish dismissed this concern by explaining that it has

---

[1] (...continued)

*also Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 302 n.13 (5th Cir. 1999) (allowing administrator to supplement the record results in a case oscillating between the courts and the administrative process, prolonging the litigation of a relatively small matter that is best resolved quickly). It may not add new reasons as the litigation proceeds. This inefficiency would waste judicial resources.

provided this benefit to 156 disability retirees, each of whom were still employees of Ladish when they met all of the requirements for receiving the benefit. Presumably this means that Ladish was willing to keep these employees on extended medical leave while they pursued a finding of disability from the SSA. Nothing in the Plan required them to do so, however, and as was shown in Reich's case, the company was able to arbitrarily deny a particular employee disability benefits by terminating him rather than granting extended medical leave while he pursued Social Security disability benefits.

Nonetheless, Ladish maintains that Reich is entitled to deferred vested retirement benefits even though the Plan requires him to be a Participant at the time he qualifies for the benefit. Both parties agree that Reich must be sixty years old to be eligible for this benefit and that he was terminated while still in his early fifties. This concession undercuts every other argument by Ladish regarding the interpretation of the term "Participant." If a break in service is not relevant to Reich's status as a Participant for deferred vested retirement benefits, for example, it is not relevant to his status as a Participant for Disability Retirement benefits. Ladish has no explanation for treating identically worded provisions differently.

Once a term has been defined by the Plan and interpreted by the administrator to have a particular meaning, the administrator may not change the meaning when the term is used in a different part of the Plan without any basis in the Plan or in ERISA to do so. This is the very definition of arbitrary and capricious. Ladish has not offered a single reason, either in its brief or at oral argument, to give two different meanings to the word "Participant" in two different parts of the Plan. Having conceded that Reich is a Participant for the purposes of the deferred vested retirement benefits, the Plan may not argue that he is not a Participant for the purposes of Disability retirement

benefits. Such a decision is therefore clearly unreasonable, and cannot stand. Because Ladish's sole reason for the denial of benefits rests on an unreasonable interpretation of the Plan, Reich is entitled to summary judgment.

That brings us to the question of a remedy. We have now found that Reich is a Participant and meets all other criteria for Disability retirement benefits. The parties do not disagree about the mechanical calculation of the amount of benefits due, although the district court made no finding as to the amount. The Plan provides that Reich is entitled to Disability benefits beginning on the date of the SSA determination of disability. The parties agree that the appropriate date is April 2, 1998, and that Reich is not entitled to accrued benefits before that date even though the SSA's decision was retroactive to August 22, 1994. Reich is also entitled to health insurance benefits because Ladish concedes that an employee who is entitled to Disability retirement benefits is also entitled to health insurance under the Plan. The district court did not reach the amount of damages for health insurance benefits because it declined to find Reich eligible for Disability retirement benefits. A finding must therefore be made for this amount as well. Remand to the Plan administrator would serve no purpose here when all that remains to be accomplished is a mechanical calculation of the amount of benefits due. *See Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 464 (7th Cir. 2001). We therefore reverse the judgment and remand to the district court for the purpose of entering judgment in favor of Reich in the appropriate dollar amount.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*